Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3971 | **DATE** | 4/12/2004 |
| **CASE TITLE** | EEOC, *et al.* v. Sears, Roebuck & Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Reinstated Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's Reinstated Motion for Summary Judgment is granted. See attached.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 1 2 2004 | |
| | Notified counsel by telephone. | | date docketed | 118 |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, on behalf )
of Judith Keane, )
)
)
Plaintiff, )
) No. 97 C 3971
v. )
) HONORABLE CHARLES R. NORGLE
SEARS, ROEBUCK and COMPANY, INC, )
)
Defendant. )

DOCKETED
APR 12 2004

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge:

Before the court is the Equal Employment Opportunity Commission's ("EEOC") suit on behalf of Judith Keane, alleging that Keane's former employer, Sears, Roebuck and Company, Inc. ("Sears") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), by failing to reasonably accommodate her disability. The EEOC alleges that Sears constructively discharged Keane. Keane has since intervened in the suit.[1]

The court previously granted summary judgment for Sears on both claims, finding that Keane failed to submit any evidence of a disability as defined by the ADA (the court therefore did not reach defendant's alternative grounds for summary judgment), and that Keane also had submitted no evidence that she was constructively discharged. See EEOC v. Sears, No. 97 C 3971, 1999 WL 977072 (N.D. Ill. Oct 22, 1999). On appeal, the Seventh Circuit affirmed the grant of summary judgment as to the constructive discharge claim. EEOC v. Sears, 233 F.3d 432, 440-41 (7th Cir. 2000). However, the Seventh Circuit reversed and remanded as to the failure to reasonably

---

[1] For purposes of this opinion, both EEOC and Keane will be referred to collectively as Keane.

accommodate claim. Id. at 437-440. The Seventh Circuit found that "there exist disputed issues of material fact regarding whether or not Keane is disabled under the ADA." Id. at 438. This case was remanded in order for the court to undertake a "more searching analysis" as to Sears' alternative reasons for summary judgment. Id. at 440. On January 26, 2001, Sears filed a motion to reinstate its Motion for Summary Judgment. See Def.'s Mot. to Reinstate its Mot. for Summ. J. and for Ruling Thereon. The court granted that motion, and ordered that supplemental Local Rule 56.1 Statements be submitted, which the parties have provided. On January 28, 2002, Sears filed a motion for the court to take judicial notice of the United States Supreme Court's decision in Toyota Motor Manufacturing Kentucky, Inc. v. Williams, 534 U.S. 184 (2002). The motion is now fully briefed and before the court.

## I. BACKGROUND[2]

From September 1992 until May 1995, Judith Keane worked as a part-time, non-commissioned sales associate at the Sears store in Calumet City, Illinois. Keane was primarily assigned to the Intimate Apparel Department, although she occasionally worked in other departments such as women's dresses, sportswear, handbags, and hosiery. Keane's duties included assisting customers, sizing racks, and handling purchases at the cash register. Additionally, Keane picked up money bags in the store office and dropped them off at cash registers as she arrived on the job. Keane generally worked five to six hour shifts. Keane's immediate supervisor was Jacqueline

---

[2] The court takes the facts from the parties' former Local Rule 12(M, N) Statements, the supplemental Local Rule 56.1 Statements, the accompanying exhibits, and the pleadings. Disputed facts are noted in the text.

2

Klisiak, but if Klisiak was absent Keane reported to either Shirley Oros or Tanya Branch, who were two other supervisors in the department. All management personnel reported to the store manager David Allen.

In the summer of 1994, Keane asked Klisiak is she could eat in the Intimate Apparel stockroom during her breaks. Keane said she was having trouble with her legs. Near that stockroom were a refrigerator, a desk, and Klisiak's office. Klisiak granted Keane permission to eat in the stockroom, although eating in the stockroom was generally not allowed. On rare occasion, however, Keane would walk to the food court. Keane does not say how far away it was or how long it took to walk there.

In December 1994, Keane went to see Louis Deporter, M.D. complaining of numbness in her leg. Dr. Deporter referred Keane to a neurologist, Kathryn Hanlon, M.D., who examined Keane on December 22, 1994. Dr. Hanlon diagnosed Keane with neuropathy, a general description of nerve damage. Hanlon recorded the diagnosis on a form note. That form note included a heading entitled "Limit." Under that heading, Dr. Hanlon wrote the following: "Walking - avoid prolonged periods of walking and long distances." Additionally, in January 1995, Dr. Deporter diagnosed Keane as having non-insulin dependent diabetes.

When Keane returned to Sears, she gave Dr. Hanlon's form note, including the limitation on walking, to Oros to pass on to Klisiak. Keane did not discuss the form note with Klisiak. Klisiak reviewed the form note in early January 1995 and believed that Keane's limit on walking could be accommodated by having her spend less time walking on the sales floor. Because sales associates'

hours were typically reduced after the holidays, Klisiak believed that Keane was walking less and that the form note's limitation had been met. Klisiak then forwarded the note to the store manager Allen.

Allen reviewed the form note and thought it was vague and that it did not provide enough information about any physical restrictions Keane might have had. Allen asked Keane to provide additional information so that he could determine what steps Sears could take to assist her. Allen also provided Keane with a Sears Physician Certification form and requested that she have her physician complete it.

Keane submitted the Certification form to Dr. Deporter in April 1995, and he completed it on April 18, 1995. Dr. Deporter indicated on that form that no surgery had been performed, and that Keane had been diagnosed with neuropathy and diabetes. Under the "Limitation" portion of that form, Dr. Deporter wrote: "Excessive walking - allow easy/short access to job site."

Allen reviewed the completed Certification form and allowed Keane easier access to both the store and her department. Allen believed that Sears had complied with the specified limitation. Sears had modified Keane's parking arrangement so that she could park in the spaces located immediately outside the door leading to the Intimate Apparel Department. Sears normally required that employees park in the employee parking area, which was at the far reaches of Sears' parking lot. Additionally, since January of 1995, Klisiak had allowed Keane to cut through the Shoe Department storeroom to get to and from the Intimate Apparel Department. Though this short-cut reduced Keane's walk to her department by half, Keane used it only occasionally. On one occasion, the

manager of the Shoe Department, Joy Krumweide, told Keane not to cut through the storeroom because it was a restricted area due to security concerns. Krumweide was unaware of Keane's health condition.

In May of 1995, Keane resigned allegedly because Allen denied her the use of the short-cut through the Shoe Department storeroom. This suit followed in June 1997.

## II. SCOPE OF REMAND

A district court reviewing a case on remand is free to examine only certain aspects of the case, namely those issues that have been specifically remanded to the district court. See United States v. Husband, 312 F.3d 247, 251 (7th Cir. 2002); see also United States v. Morris, 259 F.3d 894, 898 (7th Cir. 2001). When an appellate court decides an issue in a particular case, that issue remains decided for the purposes of any subsequent proceedings in the same case. See Husband, 312 F. 3d at 251. Thus, when an appellate court remands a case to a district court, the district court is not free to reexamine issues already decided by the appellate court. See id. "[A]ny issue conclusively decided by [the Appellate Court] on the first appeal is not remanded." Id.; see also Morris, 259 F.3d at 898; United States v. Thomas, 11 F.3d 732, 736 (7th Cir. 1993). In order to decide what issues are not within the scope of remand, "the opinion needs to be looked at as a whole." Husband, 312 F.3d at 251; see also United States v. Parker, 101 F.3d 527, 528 (7th Cir. 1996) ("[T]he scope of remand is determined not by formula, but by inference from the opinion as a whole.").

The "general principle that the district court can only hear a case within the scope of remand" originates with the law of the case doctrine. Id.; see also Morris, 259 F.3d at 898. "Generally, under

the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" Id.; see also Thomas, 11 F.3d at 736; United States v. Feldman, 825 F.2d 124, 130 (7th Cir. 1987) ("This doctrine serves to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.").

In reviewing cases on remand, district court judges are not always bound by principles of law decided by appellate courts. "An appellate mandate does not turn a district judge into a robot, mechanically carrying out orders that become inappropriate in light of subsequent factual discoveries or changes in the law." Barrow v. Falck, 11 F.3d 729, 731 (7th Cir. 1993); see also United States v. Story, 137 F.3d 518, 520 (7th Cir. 1998) ("Although we have the discretion to reconsider an issue that we have already decided in prior stages of litigation, (citations omitted), we usually decline to do so unless 'an intervening change in the law, or some other special circumstance, warrants reexamining the claim.'"). The law of the case doctrine therefore does not require district court judges on remand to apply rules of law decided upon by appellate courts, if a controlling authority has changed the law at issue. The doctrine of the law of the case "allows some flexibility, permitting a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim." Thomas, 11 F.3d at 736; see also United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986).

The Seventh Circuit found that "there exist disputed issues of material fact regarding whether or not Keane is disabled under the ADA." Sears, 233 F.3d at 438. In making that determination,

the Seventh Circuit relied upon the following rule of law:

> [A] disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual . . . 42 U.S.C. § 12102(2) . . . In determining whether an individual is substantially limited in a major life activity, we examine whether that individual, when compared to the general population, is unable to perform or is significantly restricted as to the condition, manner, or duration under which she can perform that major life activity.

Id. Barring a change in the law, this rule controls all subsequent proceedings in this case. See Morris, 259 F.3d at 898; Thomas, 11 F.3d at 736; Feldman, 825 F.2d at 130.

The Seventh Circuit then remanded this case to the district court specifically to examine the defendant's alternative grounds for summary judgment, stating:

> The district court did not address whether summary judgment was appropriate based on reasons other than Keane's classification as disabled. While we recognize that the court stated in a footnote that it found such arguments persuasive, we determine that it is necessary to remand this case for a more searching analysis.

Sears, 233 F.3d at 440. Barring any "special circumstance," such as "an intervening change in the law," this would constitute the whole of the scope of remand, and the district court would not be permitted to reexamine the issue of whether Keane was disabled under the ADA. See Thomas, 11 F.3d at 736; Story, 137 F.3d at 520.

### III. AN INTERVENING CHANGE IN THE LAW REGARDING THE DEFINITION OF "DISABILITY" UNDER THE ADA

#### A. The ADA and Employment Discrimination

The ADA prohibits employers from discriminating against persons with disabilities in connection with employment activities. See 42 U.S.C. § 12112(a); see also 42 U.S.C. § 12111(2) (entities "covered" by the ADA include, *inter alia*, "an employer, employment agency, labor

7

organization"). A "disability" under the ADA is: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." Id.

Keane does not argue that she has a record of an impairment that substantially limits a major life activity, or that Sears regarded her as having one. The relevant inquiry is whether Keane has an impairment that substantially limits a major life activity. A physical impairment is "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory; including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine." 45 C.F.R. § 84.3(j)(2)(i). Keane clearly has such an impairment: Dr. Hanlon has diagnosed Keane with neuropathy, or nerve damage. This impairment affects Keane's ability to walk. Walking is a major life activity. See 45 C.F.R. § 84.3(j)(2)(ii); see also Toyota, 534 U.S. at 195. The more pointed inquiry thus becomes whether Keane's physical impairment, which clearly affects a major life activity, in fact substantially limited her in that major life activity.

Not every impairment that affects a major life activity is considered a disability under the ADA. For instance, an impairment that is only temporary is not a disability. See Waggoner v. Olin Corp., 169 F.3d 481, 484 (7th Cir. 1999). The impairment must "in fact" be a substantial limitation on a given individual's ability to perform the major life activity; the fact that a given individual performs such an activity differently than others does not in and of itself indicate that the individual

is disabled under the ADA. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 564-65 (1999). Courts are to look to the following factors to determine whether an individual has an impairment that substantially limits a major life activity: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii); see also Hamm v. Runyon, 51 F.3d 721, 725 (7th Cir. 1995). Any mitigating measures taken by the impaired individual must be taken into account in determining whether the individual is disabled. See Albertson's, 527 U.S. at 565; see also Sutton v. United Airlines, Inc., 527 U.S. 471, 482 (1999). Finally, courts are to determine whether individuals are disabled on a case-by-case basis. See 42 U.S.C. §§ 12102(2); see also Albertson's, 527 U.S. at 566; Sutton, 527 U.S. at 483.

**B. The Seventh Circuit's Rule of Law: *EEOC v. Sears***

In remanding, the Seventh Circuit indicated that the rule of law regarding whether an individual is disabled under the ADA was the following: "In determining whether an individual is substantially limited in a major life activity, we examine whether that individual, when compared to the general population, is unable to perform or is *significantly* restricted as to the condition, manner, or duration under which she can perform that major life activity." Sears, 233 F.3d at 438 (emphasis added). Keane is considered disabled under this definition of disability, if she cannot walk, or is significantly limited in her ability to walk. Under that standard, the Seventh Circuit determined that "the plaintiffs have met their burden of establishing a material dispute as to the severity of Keane's impairment." Id. at 439.

## C. An Intervening Change in the Law: *Toyota v. Williams*

In Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, the plaintiff was diagnosed with "bilateral carpal tunnel syndrome and bilateral tendonitis." 534 U.S. at 187. These impairments restricted plaintiff's ability to use pneumatic tools and lift heavy objects on her assembly-line job at defendant's manufacturing plant. See id. at 184-85. In determining whether the plaintiff had met her burden of showing a disability under the ADA, the Supreme Court indicated that the plaintiff was required to meet a high standard. See id. at 196-97. The Court first noted that an impairment must "substantially limit" a major life activity. Id.; 42 U.S.C. § 12102(2)(A). In order for an impairment to be substantial, the Court reasoned, the impairment would have to "considerabl[y]" or "to a large degree" interfere with a major life activity. Id. at 196. Conversely, "impairments that interfere in only a minor way" with major life activities are not to be considered disabilities. Id. at 197. The Court held "that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or *severely* restricts the individual from doing activities that are of central importance to most people's lives." Id. at 198 (emphasis added).

The Toyota decision has changed the law regarding the definition of "disability" under the ADA. See, e.g., Dvorak v. Mostardi Platt Associates, Inc., 289 F.3d 479, 484 (7th Cir. 2002) (stating, "the [Toyota] Court established a higher threshold for the [ADA] statute than some had believed it contained"). An individual is no longer considered to be disabled under the first prong of the ADA's definition of disability if she is *significantly* limited in performing a major life activity. See Sears, 233 F.3d at 438. Now, an individual is considered disabled under the first prong of the

ADA's definition of disability of she is *severely* limited in performing a major life activity. See Toyota, 534 U.S. at 198; Dvorak, 289 F.3d at 484. The court will therefore proceed in this matter using the Toyota definition of disability as the appropriate standard.

## IV. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996). The moving party bears the initial burden of pointing to those parts of the record that indicate the absence of any issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Logan, 96 F.3d at 978. Should the moving party meet this initial burden, the non-moving party must then "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Logan, 96 F.3d at 978. These facts must be material, as "[i]rrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); see also Logan, 96 F.3d at 978. In essence, "summary judgment is proper only if there is no reasonably contestable issue of fact that is potentially outcome-determinative." Sears, 233 F.3d at 436.

In determining whether there is a "genuine dispute of material fact," a court should look at the evidence in a light "most favorable to the nonmoving party." Id. at 437. However, if the "record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment must "present definite, competent evidence to rebut the motion." Sears, 233 F.3d at 437.

## V. DISCUSSION

### A. Keane's Status as "Disabled" under the ADA

The court notes at the outset that due to the change in the law regarding the definition of "disability" under the ADA, in order to survive this motion for summary judgment, Keane must present evidence that her disability severely limits her ability to walk. See Toyota, 534 U.S. at 198. The Toyota court emphasized that the question of whether an individual is "disabled" is to be analyzed under a "strict" standard; there is a "demanding standard for qualifying as disabled . . . ." Id. at 197. Keane fails to meet that standard.

Keane argues that she is "disabled" under the ADA based on the following facts. She was diagnosed with neuropathy (nerve damage) in her leg. Keane has difficulty walking, numbness in her legs at times, and requires a cane to walk from her car to her work station. Defendant argues, however, that certain admissions by Keane indicate that she, while impaired, is not "disabled" under the ADA.

The following admissions by Keane demonstrate that Keane can present no evidence that she is severely limited in walking. "While employed by Sears as a sales clerk, Keane was able to and did walk the short distances around her sales area." Pls.' Mem. in Opp. to Def.'s Mot. for Summ. J., at 1. Keane was able, with the aid of a cane, to walk from various parking locations to her

department. See id. at 6. Keane had no difficulty standing for five to six hours at a time on the sales floor while doing her job. See Def.'s Rule 12(M) Stmt. ¶¶ 21-24. Moreover, Keane did not use a cane while she was working these five to six hour shifts. See Def.'s Supp. LR 56.1 Stmt. ¶ 11 (citing Keane Dep. at 448-49); see also Pls.' Resp. to Def.'s Supp. LR 56.1 Stmt. ¶ 11. She was able to walk without her cane to other departments, such as hosiery, which was three-quarters of the way to the end of the entire Sears store. See Def.'s Rule 12(M) Stmt. ¶ 22; Def.'s Supp. LR 56.1 Stmt. ¶ 11 (citing Keane Dep. at 448-49). Keane admits these walks were not problematic for her. See id.; id. When Keane was working for Sears, she was able to go shopping after her shift. See Def.'s Supp. LR 56.1 Stmt. ¶ 17 (citing Keane Dep. at 149). Keane spent up to ten hours each Friday cleaning her house during her period of employment at Sears. See Def.'s Rule 12(M) Stmt. ¶ 30 (citing Keane Dep. at 425). Keane does not use her cane in her home, except to go up and down stairs. See Def.'s Supp. LR 56.1 Stmt. ¶ 18 (citing Keane Dep. at 506). Keane does not use her cane to go from her house to her car in her attached garage. See id. ¶ 19 (citing Keane Dep. at 506).

By way of example, the court points to PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001), as a clear instance of an individual who has a disability, even under the heightened Toyota standards. Casey Martin is a professional golfer. See id. at 669. Professional golfers (other than those on the Senior PGA Tour) are required to walk the golf courses during tournament play. See id. at 666-67. Martin had Klippel-Trenaunay-Weber Syndrome, a degenerative circulatory disorder. See id. at 668. As a professional golfer, Martin faced the following difficulties in walking on a golf course. Martin's disorder "obstruct[ed] the blood flow from his right leg to his heart." Id. "The disease

13

[was] progressive; it cause[d] severe pain and has atrophied his right leg." Id. "Walking not only caused him pain, fatigue, and anxiety, but also created a significant risk of hemorrhaging, developing blood clots, and fracturing his tibia so badly that an amputation might be required." Id.

The court is not unsympathetic to Keane's impairment. However, The Supreme Court of the United States has indicated that in order to qualify as "disabled," an individual must show an impairment that severely limits a major life activity. See Toyota, 534 U.S. at 198. Keane can provide no such evidence concerning her impairment. Dr. Hanlon's diagnosis of neuropathy, combined with Keane's testimony regarding her difficulty in walking, provide sufficient evidence that she is impaired. Keane has, however, provided no "definite, competent evidence" to indicate that she is severely limited in walking; in fact, her admissions strongly indicate the contrary. She testifies that she can walk about her job site, and to other departments and locations within Sears, without the use of a cane. Moreover, this court is directed to evaluate Keane's impairment with reference to mitigating devices, i.e., her cane. See Sutton, 527 U.S. at 482. Keane admits that she was able, with the aid of a cane, to walk from her car to her job site. Since Keane can present no evidence that she is "disabled" under the ADA with or without the use of her cane, her claim must fail as a matter of law.

## B. Defendant's Alternative Arguments for Summary Judgment

Assuming *arguendo* that Keane is disabled under the ADA, the court will review Sear's alternative arguments for summary judgment.

14

### *1. The Three-Step Process for Meeting the Needs of the Working Disabled*

The ADA contemplates a three-step process in providing for the needs of the working disabled. If Keane is "disabled" under the ADA, she first has an obligation to inform Sears of her disability. See 42 U.S.C. § 12112(b)(5)(A) (indicating that employers discriminate unlawfully against otherwise qualified individuals by "not making reasonable accommodations to known physical or mental limitations"); see also Amadio v. Ford Motor Co., 238 F.3d 919, 929 (7th Cir. 2001) ("An employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations."); Hunt-Golliday v. Metropolitan Water Reclamation Dist., 104 F.3d 1004, 1012 (7th Cir. 1997); Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1134 (7th Cir. 1996).

Assuming that Keane had made her disability known to Sears, the process contemplated by the ADA would move to its second step: Keane would have the duty to engage in an interactive process with Sears to determine what accommodations would reasonably be needed. 42 U.S.C. § 12112(b)(5)(A); see also Rehling v. City of Chicago, 207 F.3d 1009, 1015-016 (7th Cir. 2000); Bultmeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281, 1285 (7th Cir. 1996). Sears, of course, has a duty to engage in this interactive process with Keane. See Rehling, 207 F.3d at 1015-016; Beck, 75 F.3d at 1135; Bultmeyer, 100 F.3d at 1285.

Assuming that Keane had made her disability known to Sears, and that the two parties had engaged in an interactive process to determine how to accommodate Keane, the process would move to its third and final step: Sears would be required to provide Keane with reasonable

accommodations for her disability. 42 U.S.C. § 12112(b)(5)(A); see also Beck, 75 F.3d at 1135; Hunt-Golliday, 104 F.3d at 1012. A reasonable accommodation "is something concrete - some specific action required of the employer" that will accommodate the individual's disability. Beck, 75 F.3d at 1135.

### 2. *Sears' Awareness of Keane's Disability*

Keane argues that she fulfilled her duty to inform Sears of her disability, and that Sears was aware of her disability. See Pls.' Mem. in Opp. to Def.'s Mot. for Summ. J., at 16-17. She argues that she complained to Sears' management personnel regarding her difficulties in walking, and provided management with two doctor's notes indicating her diagnosis of neuropathy and her limitations in walking. See id. These measures, she argues, fulfilled her duty to inform Sears of her disability, and also indicate that Sears was aware of her disability. See id. Defendant argues, on the other hand that Keane's initial duty to inform required that she give Sears specific information regarding her disability and her limitations. See Def.'s Mem. in Supp. of Mot. for Summ. J., at 14-15.

In Steffes v. Stepan Co., the plaintiff provided her employer with a doctor's note that simply said that the plaintiff could not have "exposure to chemicals." 144 F.3d 1070, 1072 (7th Cir. 1998). The Seventh Circuit reasoned that since the doctor's note indicated only "blanket restrictions" on work activities, the plaintiff had a further duty to "update or further clarify the kinds of work she could do," and what sorts of working conditions were tolerable to her. Id. In this case, Keane gave Sears two doctor's notes indicating only blanket limitations on walking. Keane therefore had a duty

to further clarify matters for Sears regarding her disability. See id. Since plaintiff can provide no evidence that she or either of her doctors communicated to Sears in greater detail regarding the nature of her disability or her limitations, the court finds that as a matter of law, Sears was not aware of the full extent of Keane's disability.

### 3. *The Breakdown of the Interactive Process*

Keane next argues that Sears was responsible for the breakdown of the required interactive process between herself and Sears. See Pls.' Mem. in Opp. to Def.'s Mot. for Summ. J., at 22-24. Keane argues that Sears made no reasonable efforts to determine what accommodations may have been appropriate for her. See id. at 24. Sears, on the other hand, argues that Keane was the one who caused the breakdown of the interactive process. See Def.'s Mem. in Supp. of Mot. for Summ. J., at 18-20.

The court notes that the primary breakdown of the interactive process occurred when Keane quit her job. Also, the Seventh Circuit has held that where a disabled employee has an obligation to "further clarify the kinds of work she can do" and what sort of working conditions she requires, and fails to do so, such inaction constitutes a breakdown of the interactive process. See Steffes, 144 F.3d at 1072; Beck 75 F.3d at 1136 ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the [interactive] process."). Here, Keane only provided Sears with two doctor's notes listing blanket limitations on her walking.

Keane can provide no evidence that she participated in the interactive process to the extent contemplated by the ADA. See Steffes, 144 F.3d at 1072; Beck 75 F.3d at 1136. In fact, the potential for any interactive process ended when Keane quit her job. The court therefore finds that as a matter of law, Keane caused a breakdown in the interactive process.

### 4. *Reasonable Accommodations*

If Keane properly informed Sears of her disability, and did not cause a breakdown in the interactive process, Sears had a duty to provide Keane with reasonable accommodations for her disability. See 42 U.S.C. § 12111(9) (listing some examples of reasonable accommodations: "job restructuring, part-time or modified work schedules, reassignment . . ."); see also Beck, 75 F.3d at 1135 ("The employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable the disabled individual to work."). The accommodations provided to a disabled employee must only be reasonable; "[a]n employer is not obligated to provide the accommodation he requests or prefers." Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996).

Keane argues that Sears' attempts at accommodating her disability were not reasonable. See Pls.' Mem. in Opp. to Def.'s Mot. for Summ. J., at 20-22. This argument focuses on Sears' revocation of permission for Keane to cut through a storeroom, and the inadequacy of allowing Keane to use handicapped parking. See id. Keane argues that the handicapped parking actually increased her walk to her department. See id. Sears contends that Keane never told it that the handicapped parking was inadequate in this manner, that it offered Keane the use of the Intimate

Apparel stockroom in which Keane could eat so that Keane could avoid walking to the food court, and that Keane's permission to cut through the Shoe Department storeroom was never "officially" denied. See Def.'s Mem. in Supp. of Mot. For Summ. J. at 17-18.

The court finds that Sears did provide Keane with reasonable accommodations. Sears did allow Keane to park in a handicapped space near her work-station, and Keane never indicated to Sears that this was inadequate. Keane used the stockroom to eat, and utilized the short-cut through the storeroom for a period of time. When a dispute arose over whether Keane could continue to use the storeroom short cut and the stockroom for meals, Keane simply quit. The court therefore finds that as a matter of law, Sears provided Keane with reasonable accommodations.

## VI. CONCLUSION

The court holds that under the Toyota standard, Keane has not met her threshold burden of showing that she is disabled under the ADA, as she can present no evidence to convince a trier of fact that she is "severely" limited in her ability to walk. See Toyota, 534 U.S. at 198. Secondly, however, even if Keane could present evidence that she was disabled under Toyota, she can present no evidence that she adequately informed Sears of her disability, that she did not cause the breakdown in the interactive process, or that Sears failed to provide her with reasonable accommodations. For the foregoing reasons, Sears' motion for summary judgment is granted.
IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 4-11-04